## BURLISON v. RECONSTRUCTION FINANCE CORPORATION.
### Civ. A. No. 416.

District Court, N. D. Texas, Wichita Falls Division.

Nov. 19, 1947.

——◆——

Rush H. Record (of Nelson, Montgomery & Robertson), of Wichita Falls, Tex., for plaintiff.

Frank B. Potter, U. S. Dist. Atty., of Fort Worth, Tex., and Oscar Morris Harrell, Asst. U. S. Dist. Atty., of Dallas, Tex., for defendant.

ATWELL, District Judge.

Holding a Class 2 license as a slaughterer, the plaintiff was authorized to kill during the month of May, 1946, 104,140 pounds of cattle, 52,226 pounds of calves, and 55,875 pounds of hogs. In June his quota was, respectively, 90,176 cattle, 44,941 calves, and 39,398 hogs. He actually slaughtered, during those mentioned months, 89,316 cattle pounds, 52,924 calves, and 49,521 hogs. For June, 93,905 cattle, 50,264 calves and 32,885 pounds of hogs. Therefore, he killed 698 pounds excess of calves, but less than his quota of cattle and hogs. In June, he slaughtered 2,919 pounds of cattle and 5,323 of calves in excess of his quota, but less than his quota of hogs. The excess slaughter was voluntarily reported by him and was voluntarily made up by him by reducing his actual slaughter in the succeeding months.

Such activity entitled him to subsidies in the month of May on cattle of $1,346.15, June, $1,759.34; on calves, for May, $582.-16, for June, $552.90; on hogs, $841.86 and $559.05 during the same months; and he filed claims for the same.

During July the defendant paid the May claim, but thereafter on October 3, 1946, disallowed all such subsidies and reduced current amounts then due plaintiff for the months of September and October by the amount of such disallowance.

The claims for cattle and calves in June were disallowed, but the claim for hogs was allowed and paid. Later, on October 3d, the hog subsidy claim was disallowed and credited on current claims then due the plaintiff for September and October. The defendant was also charged $28 interest.

The May over-kill was not intentional and the June over-kill resulted from a change of plaintiff's quota to 85%. This information was forwarded to plaintiff by the Price Administrator on a post-card and was not received nor noted by the plaintiff until after the over-slaughter had occurred.

By reason of this happening the plaintiff asks for $5,641.46 plus certain interest charges from June and July.

Judgment is rendered for the plaintiff in that amount.

The defendant sought to defeat such recovery by invoking various Sections of the original Act, and the many regulations and amendments which had been passed thereunder by the Administrator; and, finally, by pleading that the plaintiff had not exhausted his administrative remedies before coming into court.

I think it well for us to bear in mind that the plaintiff was carrying on a legal, lawful business; that the government, during the emergency, and under the War Powers granted to it by the Congress sought to increase such activities, under a license and quota system. When such quotas were exceeded, the regulation provided for certain penalties. The original Act with reference to such penalties used the word "intentional." That word is, in all probability, not in the amended regulations.

The fact remains that when the plaintiff did go over his quota to the slight extent indicated in the foregoing statement, he voluntarily reported it and made it good by lessening his next month's kill of that particular sort of animal.

As to the claim that the plaintiff had not exhausted his administrative remedies, I am unable to discover any reason for his appealing to the Administrator at Washington, because the hearing Administrator did not enter any order against him. The Administrator, on the contrary, expressed his complete belief in the plaintiff and held with him.

498

There was, therefore, no necessity for such an appeal. The plaintiff made the same impression upon this court. He was frank, candid, and appeared to be a very high-class, law-abiding citizen. Act October 2, 1942, to amend the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq.; Executive Order 9250, October 3, 1942, Executive Order No. 9328, April 8, 1943, 50 U.S.C.A.Appendix, § 901 note.

Judgment may go for the plaintiff.